IN THE UNITED STATES DISTRICT COURT
FOR THE WESTERN DISTRICT OF TENNESSEE
WESTERN DIVISION



| | |
|---|---|
| THE CLARK CONSTRUCTION GROUP, INC., | ) |
| Plaintiff, | ) |
| v. | ) No. 01-2478 DV |
| EAGLE AMALGAMATED SERVICE, INC.; CAPITOL INDEMNITY CORPORATION; INVESTORS INSURANCE COMPANY OF AMERICA; FIRST SPECIALTY INSURANCE; LEXINGTON INSURANCE COMPANY; and RLI INSURANCE COMPANY, | ) |
| Defendants. | ) |

**ORDER GRANTING PLAINTIFF'S MOTION FOR PARTIAL SUMMARY JUDGMENT**

This matter is before the Court on the motion of Plaintiff Clark Construction Group, LLC, successor in interest to Clark Construction Group, Inc. ("Plaintiff") for partial summary judgment as to Defendant Investors Insurance Company's ("Defendant" or "Investors") duty to defend. For the reasons stated herein, Plaintiff's motion is **GRANTED**.

**I.    FACTUAL BACKGROUND[1]**

The following facts are presumed to be true for purposes of the instant motion only. Plaintiff alleges that, in February of 1999, Plaintiff entered into a written contract with the City of Memphis ("City") and the Memphis Cook Convention Commission (collectively "the owners") for the

---

[1] The factual allegations are taken from the Second Amended Complaint, Plaintiff's Statement of Undisputed Facts, and Defendant's Response in Opposition to Plaintiff's Motion for Partial Summary Judgment.

This document entered on the docket sheet in compliance with Rule 55 and/or 32(b) FRCrP on _____



renovation, expansion, and construction of the Memphis Cook Convention Center in Memphis, Tennessee (the "project"). The project included demolition of the Concourse Hall, a structure attached to the existing convention center.

On or about February 16, 1999, Plaintiff and Eagle Amalgamated Service, Incorporated ("Eagle"), entered into a written subcontract ("subcontract"). Under the terms of the subcontract, Eagle agreed to undertake demolition of the Concourse Hall, as well as other selective demolition and asbestos abatement work at the project site. Eagle was required to purchase insurance and to defend and indemnify Plaintiff against all claims, expenses, damages, and losses arising out of or in connection with the work of Eagle or any of its subcontractors. Eagle purchased a comprehensive general liability ("CGL") policy from Defendant and an excess policy from RLI Insurance Company ("RLI"). The Investors policy provided primary insurance up to a limit of $1 million per occurrence. The RLI policy provided excess coverage of up to $9 million if the Investors policy is exhausted.

Eagle retained Engineered Demolition, Inc. ("Engineered") to assist with demolition of the Concourse Hall. Engineered was also required to purchase insurance, with Plaintiff as an additional insured on the policies. Engineered purchased the required coverage from Lexington Insurance Company ("Lexington"), for primary coverage, and First Specialty Insurance, for excess coverage. With its agents and subcontractors, Eagle performed all of the preparatory work associated with the implosion of the Concourse Hall.

On October 10, 1999, Eagle and Engineered performed the scheduled implosion of the Concourse Hall. This action damaged the adjacent Convention Center. Engineered employees subsequently left the project site without participating in the complex clean-up efforts necessitated by the unexpected results of their demolition work. Several months later, Eagle also abandoned the

project prior to fulfilling the terms of the subcontract.

On October 11, 1999, the owners informed Plaintiff that they would hold Plaintiff responsible for all costs associated with repairing the damage resulting from the October 10th implosion. On October 12, 1999, Plaintiff notified Eagle, Lexington, First Specialty, Investors, and RLI of the owners' claims and demanded that Eagle and each of the insurers indemnify Plaintiff for its damages and losses arising from the accident. Plaintiff filed an action against the owners, claiming that design problems caused delays and increased costs. The owners filed a counterclaim against Plaintiff, alleging that the accident delayed the project by at least 170 days, increasing the costs of the project, and resulting in over $1 million in property damages and extensive clean up costs. Those claims are being litigated in a separate case in this district. (Clark Construction Group, Inc. v. City of Memphis, Case number 04-2780).

On June 20, 2001, Plaintiff filed the instant complaint alleging claims against Eagle and the insurers, including Investors. On February 1, 2005, Plaintiff filed a motion for partial summary judgment, alleging that Defendant has a duty to defend Plaintiff against the counterclaim of the City.

## II.  LEGAL STANDARD

Summary judgment is proper "if the pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, if any, show that there is no genuine issue as to any material fact and that the moving party is entitled to a judgment as a matter of law." Fed. R. Civ. P. 56(c). In other words, summary judgment is appropriately granted "against a party who fails to make a showing sufficient to establish the existence of an element essential to that party's case, and on which that party will bear the burden of proof at trial." Celotex Corp. v. Catrett, 477 U.S. 317, 322 (1986).

3

The party moving for summary judgment may satisfy its initial burden of proving the absence of a genuine issue of material fact by showing that there is a lack of evidence to support the nonmoving party's case. Id. at 325. This may be accomplished by submitting affirmative evidence negating an essential element of the nonmoving party's claim, or by attacking the opponent's evidence to show why it does not support a judgment for the nonmoving party. 10a Charles A. Wright et al., Federal Practice and Procedure § 2727, at 35 (2d ed. 1998).

Facts must be presented to the court for evaluation. Kalamazoo River Study Group v. Rockwell Int'l Corp., 171 F.3d 1065, 1068 (6th Cir. 1999). The court may consider any material that would be admissible or usable at trial. 10a Charles A. Wright et al., Federal Practice and Procedure § 2721, at 40 (2d ed. 1998). Although hearsay evidence may not be considered on a motion for summary judgment, Jacklyn v. Schering-Plough Healthcare Prods. Sales Corp., 176 F.3d 921, 927 (6th Cir. 1999), evidentiary materials presented to avoid summary judgment otherwise need not be in a form that would be admissible at trial. Celotex, 477 U.S. at 324; Thaddeus-X v. Blatter, 175 F.3d 378, 400 (6th Cir. 1999).

In evaluating a motion for summary judgment, all the evidence and facts must be viewed in a light most favorable to the nonmoving party. Matsushita Elec. Indus. Co. v. Zenith Radio Corp., 475 U.S. 574, 587 (1986); Wade v. Knoxville Utilities Bd., 259 F.3d 452, 460 (6th Cir. 2001). Justifiable inferences based on facts are also to be drawn in favor of the non-movant. Kalamazoo River, 171 F.3d at 1068.

Once a properly supported motion for summary judgment has been made, the "adverse party may not rest upon the mere allegations or denials of [its] pleading, but . . . must set forth specific facts showing that there is a genuine issue for trial." Fed. R. Civ. P. 56(e). A genuine issue for trial

4

exists if the evidence would permit a reasonable jury to return a verdict for the nonmoving party. Anderson v. Liberty Lobby, Inc., 477 U.S. 242, 248 (1986). To avoid summary judgment, the nonmoving party "must do more than simply show that there is some metaphysical doubt as to the material facts." Matsushita, 475 U.S. at 586.

### III.   ANALYSIS

Plaintiff moves for partial summary judgment as to Defendant's duty to defend Plaintiff against the counterclaim of the City of Memphis. Defendant contends that the Court should deny Plaintiff's motion because 1) there is no duty to defend a counterclaim, 2) the losses alleged in the City's counterclaim are not covered under the Investors policy because Plaintiff is seeking coverage for damages which do not constitute "property damage" as defined by the policy, 3) the duty to defend is the responsibility of First Specialty, Engineered's insurance carrier, and Plaintiff's settlement with First Specialty for less than the available coverage without authorization from Defendant violated Plaintiff's obligations under the Investors policy, and 4) there are genuine issues of material fact as to the amount of the cost of defense and whether or not Plaintiff has been fully compensated by settlement agreements for its loss and its defense.[2]

As an initial matter, because questions of contract interpretation are at issue, the Court must determine which state's substantive law applies. In a case such as this one, which is brought under a federal court's diversity jurisdiction, the substantive law of the forum state controls. Kipin Industries, Inc. v. Van Deilen Intern., Inc., 182 F.3d 490 (6th Cir. 1999). Thus, Tennessee's rules

---

[2]Defendant also moves the Court to stay this case pending resolution of the underlying action between Plaintiff and the City. A status conference was held on April 14, 2005 during which the Court held that the issue of the duty to defend and possibly the duty to indemnify should be resolved before a stay would be considered, as these issues are ripe for adjudication at this time. Thus, Defendant's motion for a stay is denied.

concerning conflict of laws would control in this case. Under Tennessee law, if the policy in question does not specify, courts apply the laws of the state in which the policy was issued and delivered. Hutchinson v. Tennessee Farmers Mut. Ins. Co., 652 S.W.2d 904, 905 (Tenn. Ct. App. 1983). The insurance policy at issue here was issued by Defendant to Eagle. Both Defendant and Eagle are located in Florida, and it is undisputed that the policy was delivered to Eagle in Florida. Although Plaintiff, who is located in Tennessee, is additionally insured on the policy and the policy was delivered to Plaintiff in Tennessee, Plaintiff is only an ancillary beneficiary to the policy. Eagle is the primary insured, and the policy was issued and delivered to it. Therefore, the Court holds that Florida's contract laws apply.

A. Duty to Defend a Counterclaim

Defendant argues that it has no obligation to defend Plaintiff against the City's counterclaim because the lawsuit was brought by Plaintiff against the City, not by the City against the Plaintiff. The Defendant cites Parameter Driven Software, Inc. v. Mass. Bay Ins. Co., 856 F.Supp. 314 (E.D. Mich. 1993), to support its contention that insurers have no duty to defend counterclaims that include allegations not in the complaint. The Parameter Court stated that "[t]he law within the State of Michigan mandates that a court should look to the Complaint in this cause – not the Counterclaim – to determine the existence, if any, of an insurer's duty to defend." Id. at 320. However, the court there goes on to note that the insured does not cite any case law to support its position that the duty to defend extends to the counterclaims in an insured-initiated lawsuit. Id.

In the instant case, on the other hand, Plaintiff cites numerous cases in which courts have accepted the proposition that an insurer has a duty to defend a counterclaim. The Parameter Court makes clear that it is following Michigan law when it holds that there is no duty to defend a

6

counterclaim. It cites no authority, even under Michigan law. However, Florida courts have consistently held that an insurer has a duty to defend against a counterclaim. See, e.g., Allstate Ins. Co. v. Myers, 951 F.Supp. 1014, 1017 (M.D.Fla.,1996); West American Ins. Co. v. Silverman, 378 So.2d 28, 29 (Fla. Ct. App. 1979); Heather Hill Villas Condominium Ass'n, Inc. v. American Equity Ins. Co., 816 So.2d 250 (Fla. Ct. App. 2002). As the Court has determined that Florida law is controlling here, the Court holds that the duty to defend extends to a counterclaim.

B.  Coverage of the Claims

Defendant next argues that the City's claims against Plaintiff in the countersuit are not covered by the policy, and so Defendant has no duty to defend against them. While the policy specifies that it covers property damage caused by an "occurrence," Defendant contends that the City's claims against Plaintiff are based on Plaintiff's breach of contract and not on the property damage that resulted from the implosion. Defendant notes that the policy covers tort liability but not breach of contract.

"Florida courts have adopted a strict rule that an insurer's duty to defend an action against its insured is determined solely by the allegations in the complaint. If a complaint contains allegations, some of which would be within the policy coverage and some of which are not, then the carrier has a duty to defend the case." Auto Owners Ins. Co. v. Travelers Cas. & Surety Co., 227 F.Supp.2d 1248, 1258 (M.D. Fla. 2002). In analyzing the allegations in the complaint, or in this case the counterclaim, the Court must look to the "four corners" of the policy to determine whether the counterclaim alleges facts which create a duty to defend. See Travelers Cas. and Sur. Co. v. Ribi Immunochem Research, Inc.,108 P.3d 469, 478 (Mont. 2005). All doubts as to whether a duty to defend exists in a particular case must be resolved against the insurer and in favor of the insured.

7

Grissom v. Commercial Union Ins. Co., 610 So.2d 1299, 1307 (Fla. Ct. App. 1992). "So long as the complaint alleges facts that create potential coverage under the policy, the insurer must defend the suit." Id.

In the instant case, Plaintiff alleges that the City continues to assert claims against it for consequential damages that are the result of the implosion. Furthermore, the Plaintiff maintains that the City's claims are for property damage, even when they are labeled breach of contract. "The language of the CGL policy and the purpose of the CGL insuring agreement will provide coverage for claims sounding in part in breach-of-contract/breach-of-warranty under some circumstances." American Family Mut. Ins. Co. v. American Girl, Inc., 673 N.W.2d 65, 75 (Wis. 2004) (internal citations omitted).

Although the policy contains an exclusion for property damage that the insured is obligated to pay because of contract liability, there is an exception that states that the exclusion does not apply to liability for damages that the insured would have if there were no contract. The Florida Supreme Court has stated that "insurance contracts are construed in accordance with the plain language of the policies as bargained for by the parties." Auto-Owners Ins. Co. v. Anderson, 756 So.2d 29, 34 (Fla. 2000). Moreover, the Court has also stated that if the policy language is ambiguous, "it should be construed against the drafter and in favor of the insured; and, that ambiguous exclusionary clauses are 'construed even more strictly against the insurer than coverage clauses.'" General Security Nat. Ins. Co. v. Marsh, 303 F.Supp.2d 1321, 1324 (M.D. Fla. 2004). "Florida law also requires the Court to consider the policy as a whole, and to give meaning to all of its terms." Id.

In construing the policy in favor of the insured and considering the meaning and purpose of the policy as a whole, the Court finds that the exclusion, while somewhat ambiguous under the

8

circumstances, does not preclude the Plaintiff from coverage under the policy.

C. <u>Other Insurance Policies</u>

Defendant asserts that Engineered's insurers should have first responsibility because Engineered was responsible for the implosion. Defendant further argues that Clark's settlement with First Specialty violates the cooperation clause of Defendant's policy and prejudices Defendant.

It is undisputed that Engineered performed the implosion which caused the damage at issue. Plaintiff's settlement with Lexington, Engineered's primary insurer, more than exhausted that policy. The question then becomes the comparative responsibility of Defendant and First Specialty, which is Engineered's excess insurer. Defendant's policy specifies that when other insurance is available, the obligations of Defendant are unaffected unless the other insurance is also primary. Thus, the plain language of the policy places Defendant's obligation above that of First Specialty. Furthermore, the First Specialty policy specifies that it is an excess policy and that First Specialty has no duty to defend if there is any other insurer who has that duty.

However, Defendant argues that because Engineered caused the damage, its insurance should all be exhausted first. Because Plaintiff settled with First Specialty for substantially less than the policy limit would allow, Defendant asserts that it was relieved of its obligation. After the implosion, the City informed Plaintiff that it would hold Plaintiff responsible for the damage. Plaintiff then notified Eagle and all of the insurers of the City's claims and demanded indemnification. All of the insurance companies initially refused to take responsibility. Plaintiff entered into mediation in an attempt to mitigate the damages it was facing. To penalize the Plaintiff for doing so would be unjust. Additionally, to preclude Plaintiff from reaching a settlement with one insurer because it would violate the cooperation clause of the policy with another insurer who is

9

denying any responsibility would place an onerous burden on Plaintiff.

Thus, the Court finds that Plaintiff's settlement with First Specialty does not violate the cooperation clause of Defendant's policy or eliminate Defendant's responsibility to defend Plaintiff against the City's counterclaim.

D.  Outstanding Damages

Defendant next argues that there are genuine issues of material fact as to whether Plaintiff has already received a sufficient amount from the settlements that have been reached to cover all costs it has so far incurred, thus precluding the Court from ruling on Defendant's duty to defend. Plaintiff states that, at a minimum, there is an additional $425,000 in delay damages that are the result of the implosion that the City is alleging. Moreover, as long as there is a counterclaim against which Plaintiff must be defended, the duty to defend exists. Thus, although the specific amount to be allocated to defense is yet to be determined, the Court holds that Defendant has a duty to defend Plaintiff against the City's countersuit.

## IV. CONCLUSION

For the foregoing reasons, Plaintiff's motion for partial summary judgment as to Defendant Investor's duty to defend Plaintiff against the City's counterclaim is **GRANTED**.

**IT IS SO ORDERED** this  26  day of April, 2005.

BERNICE BOUIE DONALD
UNITED STATES DISTRICT JUDGE



# Notice of Distribution

This notice confirms a copy of the document docketed as number 224 in case 2:01-CV-02478 was distributed by fax, mail, or direct printing on May 4, 2005 to the parties listed.

---

Robert Y. Gwin
FROST BROWN TODD LLC
400 W. Market St.
32nd Floor
Louisville, KY 40202--336

J. Gregory Grisham
WEINTRAUB STOCK & GRISHAM
1715 Aaron Brenner Dr.
Ste. 512
Memphis, TN 38120

Ann E. Georgehead
FROST BROWN TODD LLC
400 W. Market St.
32nd Floor
Louisville, KY 40202--336

Ricky E. Wilkins
LAW OFFICE OF RICKY E. WILKINS
119 S. Main St.
Ste. 700
Memphis, TN 38103

Charles J. Gearhiser
GEARHISER PETERS LOCKABY & TALLANT PLLC
320 McCallie Avenue
Chattanooga, TN 37402

James H. Stock
WEINTRAUB STOCK & GRISHAM
1715 Aaron Brenner Dr.
Ste. 512
Memphis, TN 38120

Sam D. Elliott
GEARHISER PETERS LOCKABY & TALLANT PLLC
320 McCallie Avenue
Chattanooga, TN 37402

M. Clark Spoden
FROST BROWN TODD LLC
424 Church St.
Ste. 1600
Nashville, TN 37219

David T. Dekker
THELEN REID & PRIEST LLP
701 Pennsylvania Ave., N.W.
Ste. 800
Washington, DC 20004

Lucian T. Pera
ARMSTRONG ALLEN, PLLC
80 Monroe Avenue
Ste. 700
Memphis, TN 38103--246

Steven M. Crawford
FROST BROWN TODD LLC
400 W. Market St.
32nd Floor
Louisville, KY 40202--336

Kenneth O. Cooper
McLEARY DOMICO & KYLE, PLLC
100 Peabody Place
Ste. 1250
Memphis, TN 38103

Randall P. Mueller
CAREY OMALLEY WHITAKER & MANSON PA
712 Oregon Avenue
Tampa, FL 33606

Warren D. McWhirter
McWHIRTER WYATT & ELDER
73 Union Ave.
Memphis, TN 38103

Timothy F. Brown
ARENT FOX KINTNER PLOTKIN & KAHN
1050 Connecticut Ave., N.W.
Washington, DC 20036--533

George T. Lewis
BAKER DONELSON BEARMAN CALDWELL & BERKOWITZ
165 Madison Ave.
Ste. 2000
Memphis, TN 38103

Timothy R. Johnson
BASS BERRY & SIMS PLC- Memphis
100 Peabody Place
Ste. 900
Memphis, TN 38103

William L. Bomar
GLANKLER BROWN, PLLC
One Commerce Square
Suite 1700
Memphis, TN 38103

Michael Evan Jaffe
THELEN REID & PRIEST LLP
701 Pennsylvania Ave., N.W.
Ste. 800
Washington, DC 20004

W. Bruce Baird
FROST BROWN TODD LLC
400 W. Market St.
32nd Floor
Louisville, KY 40202--336

Barry L. Howard
RUTH HOWARD TATE & SOWELL
150 Second Avenue, N.
Ste. 201
Nashville, TN 37219--178

Albert C. Harvey
THOMASON HENDRIX HARVEY JOHNSON & MITCHELL
40 S. Main St.
Ste. 2900
Memphis, TN 38103--552

Honorable Bernice Donald
US DISTRICT COURT