IN THE UNITED STATES DISTRICT COURT
FOR THE WESTERN DISTRICT OF TENNESSEE
WESTERN DIVISION

|  |  |
|---|---|
| THE CLARK CONSTRUCTION GROUP, INC., ) <br> ) <br> Plaintiff, ) <br> ) <br> v. ) <br> ) <br> EAGLE AMALGAMATED SERVICE, INC.; ) <br> CAPITOL INDEMNITY CORPORATION; ) <br> INVESTORS INSURANCE COMPANY OF ) <br> AMERICA; FIRST SPECIALTY INSURANCE; ) <br> LEXINGTON INSURANCE COMPANY; and ) <br> RLI INSURANCE COMPANY, ) <br> ) <br> Defendants. ) <br> ) | No. 01-2478 DV |

## ORDER GRANTING DEFENDANT RLI INSURANCE COMPANY'S
## CROSS MOTION FOR SUMMARY JUDGMENT

This matter is before the Court on the motion (dkt. # 227) of Defendant RLI Insurance Company ("Defendant" or "RLI") for summary judgment as to RLI's duty to indemnify Plaintiff Clark Construction Group, LLC, successor in interest to Clark Construction Group, Inc. ("Plaintiff").[1] For the reasons stated herein, Defendant's motion is **GRANTED**.

I.    **FACTUAL BACKGROUND**

In February, 1999, Plaintiff entered into a written contract with the City of Memphis ("City")

---

[1] Although Defendant styles the motion as a cross motion for summary judgment, Plaintiff's motion for summary judgment was stricken in the Court's February 17, 2004 Order Striking Motions Without Prejudice. Clark never sought to restore that motion, so it is not a pending motion. Therefore, the Court will consider Defendant's motion as simply a motion for summary judgment.

and the Memphis Cook Convention Commission (collectively "the owners") for the renovation, expansion, and construction of the Memphis Cook Convention Center in Memphis, Tennessee (the "project"). The project included demolition of the Concourse Hall, a structure attached to the existing convention center.

On or about February 16, 1999, Plaintiff and Eagle Amalgamated Service, Incorporated ("Eagle"), entered into a written subcontract ("subcontract"). Under the terms of the subcontract, Eagle agreed to undertake demolition of the Concourse Hall, as well as other selective demolition and asbestos abatement work at the project site. Eagle was required to purchase insurance and to defend and indemnify Plaintiff against all claims, expenses, damages, and losses arising out of or in connection with the work of Eagle or any of its subcontractors. Eagle purchased a comprehensive general liability ("CGL") policy from Investors Insurance Company ("Investors") and an excess policy from RLI. The Investors policy provided primary insurance up to a limit of $1 million per occurrence. The RLI policy ("policy") provided excess coverage of up to $9 million if the Investors policy is exhausted.

Eagle retained Engineered Demolition, Inc. ("Engineered") to assist with demolition of the Concourse Hall. Engineered was also required to purchase insurance, with Plaintiff as an additional insured on the policies. Engineered purchased the required coverage from Lexington Insurance Company ("Lexington") for primary coverage, and First Specialty Insurance ("First Specialty") for excess coverage. With its agents and subcontractors, Eagle performed all of the preparatory work associated with the implosion of the Concourse Hall.

On October 10, 1999, Eagle and Engineered performed the scheduled implosion of the Concourse Hall. This action damaged the adjacent Convention Center. Engineered employees

subsequently left the project site without participating in the complex clean-up efforts necessitated by the unexpected results of their demolition work. Several months later, Eagle also abandoned the project prior to fulfilling the terms of the subcontract.

On October 11, 1999, the owners informed Plaintiff that they would hold Plaintiff responsible for all costs associated with repairing the damage resulting from the October 10th implosion. On October 12, 1999, Plaintiff notified Eagle, Lexington, First Specialty, Investors, and RLI of the owners' claims and demanded that Eagle and each of the insurers indemnify Plaintiff for its damages and losses arising from the accident. Plaintiff filed an action against the owners, claiming that design problems caused delays and increased costs. The owners filed a counterclaim against Plaintiff, alleging that the accident delayed the project by at least 170 days, increasing the costs of the project, and resulting in over $1 million in property damages and extensive clean up costs. Those claims are being litigated in a separate case in this district. (Clark Construction Group, Inc. v. City of Memphis, case number 04-2780).

On June 20, 2001, Plaintiff filed the instant complaint alleging claims against Eagle and the insurers, including RLI. On May 11, 2005, Defendant filed a motion for summary judgment, as to its duty to indemnify Plaintiff.

## II.   LEGAL STANDARD

Summary judgment is proper "if the pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, if any, show that there is no genuine issue as to any material fact and that the moving party is entitled to a judgment as a matter of law." Fed. R. Civ. P. 56(c). In other words, summary judgment is appropriately granted "against a party who fails to make a showing sufficient to establish the existence of an element essential to that party's case, and

3

on which that party will bear the burden of proof at trial." Celotex Corp. v. Catrett, 477 U.S. 317, 322 (1986).

The party moving for summary judgment may satisfy its initial burden of proving the absence of a genuine issue of material fact by showing that there is a lack of evidence to support the nonmoving party's case. Id. at 325. This may be accomplished by submitting affirmative evidence negating an essential element of the nonmoving party's claim, or by attacking the opponent's evidence to show why it does not support a judgment for the nonmoving party. 10a Charles A. Wright et al., Federal Practice and Procedure § 2727, at 35 (2d ed. 1998).

Facts must be presented to the court for evaluation. Kalamazoo River Study Group v. Rockwell Int'l Corp., 171 F.3d 1065, 1068 (6th Cir. 1999). The court may consider any material that would be admissible or usable at trial. 10a Charles A. Wright et al., Federal Practice and Procedure § 2721, at 40 (2d ed. 1998). Although hearsay evidence may not be considered on a motion for summary judgment, Jacklyn v. Schering-Plough Healthcare Prods. Sales Corp., 176 F.3d 921, 927 (6th Cir. 1999), evidentiary materials presented to avoid summary judgment otherwise need not be in a form that would be admissible at trial. Celotex, 477 U.S. at 324; Thaddeus-X v. Blatter, 175 F.3d 378, 400 (6th Cir. 1999).

In evaluating a motion for summary judgment, all the evidence and facts must be viewed in a light most favorable to the nonmoving party. Matsushita Elec. Indus. Co. v. Zenith Radio Corp., 475 U.S. 574, 587 (1986); Wade v. Knoxville Utilities Bd., 259 F.3d 452, 460 (6th Cir. 2001). Justifiable inferences based on facts are also to be drawn in favor of the non-movant. Kalamazoo River, 171 F.3d at 1068.

Once a properly supported motion for summary judgment has been made, the "adverse party

may not rest upon the mere allegations or denials of [its] pleading, but . . . must set forth specific facts showing that there is a genuine issue for trial." Fed. R. Civ. P. 56(e). A genuine issue for trial exists if the evidence would permit a reasonable jury to return a verdict for the nonmoving party. Anderson v. Liberty Lobby, Inc., 477 U.S. 242, 248 (1986). To avoid summary judgment, the nonmoving party "must do more than simply show that there is some metaphysical doubt as to the material facts." Matsushita, 475 U.S. at 586.

## III.   ANALYSIS

As an initial matter, because questions of contract interpretation are at issue, the Court must determine which state's substantive law applies. In a case such as this one, which is brought under a federal court's diversity jurisdiction, the substantive law of the forum state controls. Kipin Industries, Inc. v. Van Deilen Intern., Inc., 182 F.3d 490 (6th Cir. 1999). Thus, Tennessee's rules concerning conflict of laws would control in this case. Under Tennessee law, if the policy in question does not specify, courts apply the laws of the state in which the policy was issued and delivered. Hutchinson v. Tennessee Farmers Mut. Ins. Co., 652 S.W.2d 904, 905 (Tenn. Ct. App. 1983). Here, the insurance policy was issued by Defendant and delivered to Eagle, the primary insured. Both Defendant and Eagle are located in Florida, and it is undisputed that the policy was delivered to Eagle in Florida. Although Plaintiff, who is located in Tennessee, is additionally insured on the policy and the policy was delivered to Plaintiff in Tennessee, Plaintiff is only an ancillary beneficiary to the policy. Therefore, the Court holds that Florida's contract laws apply.

Defendant moves for summary judgment as to its duty to indemnify Plaintiff. Defendant argues that 1) the City does not allege claims that trigger Defendant's duty to indemnify Plaintiff because the liquidated damages are based on breach of contract, not property damage and, thus, are

5

not covered under the policy, and 2) Plaintiff's settlement with Engineered's insurers without the consent of RLI releases Defendant from its obligations under the policy.

A. Policy Coverage

Defendant first contends that the allegations of the City do not trigger RLI's duty to indemnify Plaintiff. Defendant asserts that the City alleges breach of contract, which is not covered under the policy. Defendant further maintains that the City is not seeking to recover any implosion-related property damage from Plaintiff and that Plaintiff has acknowledged that it has been fully compensated for any property damage associated with the implosion.

Plaintiff argues that the liquidated damages sought by the City are a measure of the actual damages associated with the property damage created by the implosion, which is covered under the policy. Moreover, Plaintiff insists that the delay costs are a result of the property damage caused by the implosion, not breach of contract.

While the policy specifies that it covers property damage caused by an "occurrence," Defendant contends that the City's claims against Plaintiff are based on Plaintiff's breach of its contract with the City and not on the property damage that resulted from the implosion. Defendant notes that the policy covers tort liability but not breach of contract.

The policy states that RLI agrees to pay damages that are "because of" property damage. As previously noted, Plaintiff asserts that the liquidated damages sought by the City are a measure of the actual damages caused by the delay that resulted from the implosion, not a penalty for breach of contract. Thus, the damages would be "because of" the property damage and would be covered under the policy.

Defendant argues that there is no clause in the policy specifically covering liquidated

6

damages. However, "ambiguities in insurance policies are to be construed against the drafter of the policy." St. Paul Fire and Marine Ins. Co. v. Torpoco, 879 S.W.2d 831, 835 (Tenn. 1994). RLI created a policy that included coverage for damages that are "because of" property damages, and did not specifically exclude the damages being sought in this case. Defendant had every opportunity to exclude any type of conduct it wished to exclude from coverage under the policy. See id. Defendant's assertion now that liquidated damages are not covered under the policy, even though they are a direct result of property damage that was clearly covered under the policy, is without merit because there is no exclusionary clause in the policy for liquidated damages like the ones being sought here. See id.

Defendant asserts that the policy contains a contractor's limitation endorsement which specifically excludes liability from breach of contract. However, there are times when an insurance policy provides coverage for claims that are partly based in breach of contract. See American Family Mut. Ins. Co. v. American Girl, Inc., 673 N.W.2d 65, 75 (Wis. 2004). Although the policy contains an exclusion for property damage that the insured is obligated to pay because of contract liability, there is an exception that states that the exclusion does not apply to liability for damages that the insured would have if there were no contract. The Florida Supreme Court has stated that "insurance contracts are construed in accordance with the plain language of the policies as bargained for by the parties." Auto-Owners Ins. Co. v. Anderson, 756 So.2d 29, 34 (Fla. 2000). Moreover, the Court has also stated that if the policy language is ambiguous, "it should be construed against the drafter and in favor of the insured; and, that ambiguous exclusionary clauses are 'construed even more strictly against the insurer than coverage clauses.'" General Security Nat. Ins. Co. v. Marsh, 303 F.Supp.2d 1321, 1324 (M.D. Fla. 2004). "Florida law also requires the Court to consider the policy

7

as a whole, and to give meaning to all of its terms." Id.

In construing the policy in favor of the insured and considering the meaning and purpose of the policy as a whole, the Court finds that the exclusion, while somewhat ambiguous under the circumstances, does not necessarily preclude the Plaintiff from coverage under the policy. Thus, the City's claims against Clark may trigger coverage under the policy.

B. Settlement

Defendant contends that when Plaintiff reached a settlement agreement with First Specialty, it breached its obligations under the cooperation clause of the policy. Because First Specialty is the insurer for Engineered, which is the tortfeasor, Defendant argues that Plaintiff should not have released First Specialty without first giving the Defendant notice of its intention to do so. Defendant asserts that entering into a settlement agreement with First Specialty and releasing it without first providing notice to Defendant violated the terms of the policy. Plaintiff argues that Defendant waived its right to assert a breach of the cooperation clause by failing to participate in settlement negotiations and by failing to request Plaintiff's cooperation. However, Plaintiff only asserts that RLI did not participate in settlement negotiations between RLI and Plaintiff when invited to do so. Plaintiff does not contend that Defendant was invited to participate in negotiations between Plaintiff and First Specialty. Defendant insists that it was turned away from mediation involving First Specialty and was never notified of Plaintiff's decision to settle with First Specialty.

Plaintiff maintains that because the policies of First Specialty and RLI are both excess policies, the indemnity costs should be shared *pro rata*. However, Defendant notes that the two policies differ significantly. First Specialty's "other insurance" clause states that the coverage is excess over other valid insurance, whether primary or excess. RLI's "other insurance" clause goes

8

farther, stating that RLI will not contribute with other insurance. In <u>Aetna Cas. & Sur. Co. v. Beane</u>, 385 So.2d 1087 (Fla. Ct. App. 1980), the court examined two competing excess policies like the two at issue here. Because of the additional language in one policy stating that the carrier will not contribute with other insurance, the court held that the coverage should not be shared on a *pro rata* basis. <u>Id.</u> at 1090.

Similarly, here, RLI's policy includes the same "will not contribute with other insurance" language analyzed in <u>Aetna</u>. Thus, the indemnification costs should not be distributed on a *pro rata* basis, as asserted by Plaintiff. Instead, First Specialty's policy must first be exhausted before RLI's policy goes into effect.

Under the policy, Defendant is ensured the subrogation right to recover any payment made by Defendant that is later received from another party. When Plaintiff settled with First Specialty, it effectively deprived RLI of its subrogation rights under the policy. Because the policy clearly states that Defendant's coverage does not begin until all underlying policies, both primary and excess, are exhausted, Plaintiff prejudiced Defendant when it released First Specialty for a fraction of the limits of its policy. Thus, Plaintiff violated the cooperation clause of the policy with Defendant when it settled with First Specialty without notifying RLI or allowing it to participate in the negotiations.

Accordingly, Defendant is not required to indemnify Plaintiff and RLI's motion for summary judgment is granted.

9

## IV. CONCLUSION

For the foregoing reasons, Defendant's motion for summary judgment as to RLI's duty to indemnify Plaintiff against the City is **GRANTED**.

**IT IS SO ORDERED** this 23rd day of August, 2005.

BERNICE BOUIE DONALD
UNITED STATES DISTRICT JUDGE

10

UNITED STATES DISTRICT COURT - WESTERN DISTRICT OF TENNESSEE



# Notice of Distribution

This notice confirms a copy of the document docketed as number 261 in case 2:01-CV-02478 was distributed by fax, mail, or direct printing on August 26, 2005 to the parties listed.

---

Ricky E. Wilkins
LAW OFFICE OF RICKY E. WILKINS
119 S. Main St.
Ste. 700
Memphis, TN 38103

James H. Stock
WEINTRAUB STOCK & GRISHAM
1715 Aaron Brenner Dr.
Ste. 512
Memphis, TN 38120

M. Clark Spoden
FROST BROWN TODD LLC
424 Church St.
Ste. 1600
Nashville, TN 37219

Jeffrey C. Smith
Armstrong Allen, PLLC
80 Monroe Avenue
Suite 700
Memphis, TN 38103

Lucian T. Pera
ARMSTRONG ALLEN, PLLC
80 Monroe Avenue
Ste. 700
Memphis, TN 38103--246

Randall P. Mueller
CAREY OMALLEY WHITAKER & MANSON PA
712 Oregon Avenue
Tampa, FL 33606

Warren D. McWhirter
McWHIRTER WYATT & ELDER
73 Union Ave.
Memphis, TN 38103

George T. Lewis
BAKER DONELSON BEARMAN CALDWELL & BERKOWITZ
165 Madison Ave.
Ste. 2000
Memphis, TN 38103

Melissa Callahan Lesmes
THELEN REID & PRIEST LLP
701 Eight St., N.W.
Washington, DC 20001--372

Timothy R. Johnson
BASS BERRY & SIMS PLC- Memphis
100 Peabody Place
Ste. 900
Memphis, TN 38103

Michael Evan Jaffe
THELEN REID & PRIEST LLP
701 Eight St., N.W.
Washington, DC 20001--372

Barry L. Howard
RUTH HOWARD TATE & SOWELL
150 Second Avenue, N.
Ste. 201
Nashville, TN 37219--178

Albert C. Harvey
THOMASON HENDRIX HARVEY JOHNSON & MITCHELL
40 S. Main St.
Ste. 2900
Memphis, TN 38103--552

Robert Y. Gwin
FROST BROWN TODD LLC
400 W. Market St.
32nd Floor
Louisville, KY 40202--336

J. Gregory Grisham
WEINTRAUB STOCK & GRISHAM
1715 Aaron Brenner Dr.
Ste. 512
Memphis, TN 38120

Ann E. Georgehead
FROST BROWN TODD LLC
400 W. Market St.
32nd Floor
Louisville, KY 40202--336

Charles J. Gearhiser
GEARHISER PETERS LOCKABY & TALLANT PLLC
320 McCallie Avenue
Chattanooga, TN 37402

Sam D. Elliott
GEARHISER PETERS LOCKABY & TALLANT PLLC
320 McCallie Avenue
Chattanooga, TN 37402

David T. Dekker
THELEN REID & PRIEST LLP
701 Eight St., N.W.
Washington, DC 20001--372

Steven M. Crawford
FROST BROWN TODD LLC
400 W. Market St.
32nd Floor
Louisville, KY 40202--336

Kenneth O. Cooper
McLEARY DOMICO & KYLE, PLLC
100 Peabody Place
Ste. 1250
Memphis, TN 38103

Timothy F. Brown
ARENT FOX KINTNER PLOTKIN & KAHN
1050 Connecticut Ave., N.W.
Washington, DC 20036--533

William L. Bomar
GLANKLER BROWN, PLLC
One Commerce Square
Suite 1700
Memphis, TN 38103

W. Bruce Baird
FROST BROWN TODD LLC
400 W. Market St.
32nd Floor
Louisville, KY 40202--336

Honorable Bernice Donald
US DISTRICT COURT